Tommy ELLIS and Addis Ellis *v.*
Melanie BENNETT and Jack Bennett

CA 99-652                                    10 S.W.3d 922

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered March 1, 2000

*Kenneth A. Harper* and *Greg Fallon*, for appellants.

*Gibson & Hashem, P.L.C.*, by: *C.C. Gibson, III*, for appellees.

WENDELL L. GRIFFEN, Judge. The appellants in this case, Tommy and Addis Ellis, are the maternal grandparents of a nine-year-old boy named Alex Bennett. Alex is the son of the appellants' daughter, Melanie Bennett, and her husband, Jack. The Bennetts are the appellees in this case.

The appellants challenge a chancellor's order denying their petition for grandparent visitation with Alex pursuant to Ark. Code Ann. § 9-13-103 (Repl. 1998). The chancellor granted the appellees' motion for summary judgment, finding that appellants were not eligible to petition for visitation under the statute because Alex, who was born out of wedlock, had been legitimated before they filed their petition. We hold that the chancellor correctly determined that Alex had been legitimated for purposes of the grandparent-visitation statute when his parents married after his birth and his father executed an acknowledgment of paternity pursuant to Ark. Code Ann. § 20-18-408 (Supp. 1999). Thus, we affirm the chancellor's order because appellants were not eligible to petition for grandparent visitation.

Alex was born out of wedlock to Melanie Ellis on April 19, 1991. Melanie later married Jack Bennett (the record does not disclose the date of their marriage). On January 18, 1996, the Bennetts acknowledged Jack's paternity of Alex by executing an acknowledgment of paternity and filing that document with the Department of Vital Statistics. Appellants subsequently filed a petition for grandparent visitation pursuant to Ark. Code Ann. § 9-13-103, which provides, in pertinent part, as follows:

> (a)(1) Upon petition by a person properly before it, a chancery court of this state may grant grandparents... reasonable visitation rights with respect to their grandchild or grandchildren... at any time if:
>
> (A) The marital relationship between the parents of the child has been severed by death, divorce, or legal separation; or
>
> (B) The child is in the custody or under the guardianship of a person other than one (1) or both of his natural or adoptive parents; or
>
> (C) *The child is illegitimate, and the person is a maternal grandparent of the illegitimate child.*

(Emphasis added.)

Appellants argued below and maintain on appeal that they properly petitioned for grandparent visitation under this statute because, in their words, "the child is illegitimate." Appellants urge us to hold that Alex was not rendered legitimate by the marriage of his parents after he was born and by Jack Bennett's acknowledgment of paternity.

█ █ In appeals from the granting of summary judgment, we review facts in a light most favorable to the appellant and resolve any doubt against the moving party. *Wilson v. General Elec. Capital Auto Lease*, 311 Ark. 84, 841 S.W.2d 619 (1992). Despite this standard of review, we believe that the chancellor correctly decided that Alex Bennett is a legitimate child for purposes of the grandparent-visitation statute and that appellants are not entitled to use this statute to enforce their visitation rights. It is certainly true that Alex was born out of wedlock and that he would be an illegitimate child for purposes of the grandparent-visitation statute but for the subsequent marriage of his parents and his father's acknowledgment of paternity. The law in Arkansas and most other jurisdictions is that an illegitimate child may be made legitimate by (a) subsequent marriage of his mother to the putative father, and (b) public acknowledgment or recognition of the child by his father. *See Edgar v. Dickens*, 230 Ark. 7, 320 S.W.2d 761 (1959); *Rogers v. Morgan*, 213 Ark. 229, 210 S.W.2d 129 (1948); *see also In re Estate of Sadie F. Clark*, 228 Iowa 75, 290 N.W. 13 (1940); *Lowtrip v. Green*, 363 Mo. 519, 252 S.W.2d 524 (1952); *Succession of Cambre*, 210 La. 451, 27 So.2d 296 (1946).

Appellants acknowledge that this law, codified at Ark. Code Ann. § 28-9-209(b) (1987), establishes legitimacy by the process noted above in cases where heirship and intestate succession are disputed. However, relying upon dictum from our supreme court's decision in *In re Estate of F.C.*, 321 Ark. 191, 900 S.W.2d 200 (1995), they contend that this law is inapplicable to determine whether a child is legitimate for purposes of Arkansas's grandparent-visitation statute.

*In re Estate of F.C.* was a paternity case in which the appellant filed a petition for appointment of an administrator and a petition for paternity in connection with a decedent's estate. The probate

judge dismissed the petition for appointment of an administrator for the estate after finding that there was no specific statutory authority for a paternity action to be pursued against a putative deceased father or his estate. The supreme court affirmed and held that the probate court lacked subject–matter jurisdiction in the case because the sole purpose of the action was to establish paternity, and cases and matters relating to paternity lie within the jurisdiction of chancery court, not probate court. The court observed that Ark. Code Ann. § 28-9-209(d)(1) "clearly contemplates that even where the illegitimate child is attempting to inherit property from his father, the probate court cannot establish paternity — a court of competent jurisdiction must do so." *In re Estate of F.C.,* 321 Ark. at 194, 900 S.W.2d at 201. Appellants, however, emphasize the following passage from this case, in which the court stated: "Further, § 28-9-209 is found in the chapter entitled 'Intestate Succession,' and the sole purpose of the procedures outlined is to determine intestate succession. The instant case is simply not an action to determine heirship." *Id.*

■ Appellants' reliance upon the dictum from *In re Estate of F.C.* does not alter the fact that Arkansas has consistently held that the subsequent marriage of the mother to the putative father and public acknowledgment of paternity by the putative father renders a child born out of wedlock legitimate. The appellants do not cite any different legal standard whereby a child born out of wedlock is rendered legitimate for purposes of grandparent visitation, nor do they offer any persuasive reason why we should require a different process for determining a child's legitimacy in this context. In deference to the great body of Arkansas law holding that a child is rendered legitimate by the subsequent marriage of the child's mother to his putative father and the father's public acknowledgment or recognition of paternity, we decline appellants' invitation to hold that a child born out of wedlock is not rendered legitimate by those same methods for purposes of determining grandparent-visitation rights.

■ We agree that paternity is not synonymous with legitimacy. However, our holding and the chancellor's decision do not confuse legitimacy with paternity. Paternity relates to the biological relationship between a man and child; legitimacy relates to the legal relationship of father to child. It is the subsequent marriage and acknowledgment of paternity (as contrasted to actual paternity) that

renders a child born out of wedlock legitimate for other purposes under Arkansas law. We see no reason in law, life, or logic to apply a different rule to petitions for grandparent visitation.

Affirmed.

ROBBINS, C.J., HAYS, S.J., STROUD, and MEADS, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. I believe we have not only decided a case that involves an issue of substantial public interest and one that should have been certified to our Supreme Court, but we have decided it wrongly.

The maternal grandparents are seeking visitation with their grandson, who is almost nine years old, pursuant to Ark. Code Ann. § 9-13-103(a)(1)(C) (Repl. 1998), which allows them to petition for visitation with their illegitimate grandchild. Although noticeably absent from the pleadings was a claim by appellee Jack Bennett that he is the biological father of the petitioner's grandchild, the chancellor granted appellee's motion for summary judgment. The chancellor, relying on Ark. Code Ann. § 20-18-408 (Supp. 1999), found as a matter of law that a child born on April 19, 1991, to an unmarried woman, was legitimatized by her subsequent marriage on January 5, 1996, to a man who on January 18, 1996, executed an acknowledgment of paternity.

Arkansas Code Annotated section 20-18-408 (Supp. 1999) provides, in part, as follows:

> Upon the birth of a child to a woman that was unmarried at the time... of birth ... the person responsible under § 20-18-401 for providing birth registration information shall: Provide an opportunity for the child's mother and natural father to complete an affidavit acknowledging paternity....

Surely, the term "natural father," as used in section 20-18-408, is synonymous with "biological father." Consequently, it was error for the court to grant a summary judgment without first determining whether or not the appellee was the biological father of the child and whether visitation was in the best interest of the child.

Moreover, in an unfettered statement, the majority asserts that an illegitimate child may be legitimatized by the subsequent mar-

riage of his mother to the putative father and the public acknowledgment or recognition of the child by his father. To reach this conclusion, the majority relies on our probate code and cases interpreting our statutory law of descent and distribution. Arkansas Code Annotated section 28-9-209(2)(b)(1987) provides that "If a man has a child or children by a woman, and afterward intermarries with her and recognizes the child or children to be his, the child or children shall be deemed and considered legitimate."

The wording in this statute clearly applies to biological fathers and not to any subsequent husbands of a woman who has a child that was born out of wedlock. But, even assuming, *arguendo*, that this was an appropriate application of the law of descent and distribution, it does not necessarily follow that this statute, which pertains to descent and distribution, would be applied when the question involves a matter unrelated to descent and distribution, that is, grandparents' visitation, which is dealt with elsewhere in the statutes. In fact, our supreme court in *In re Estate of F.C.*, 321 Ark. 191, 900 S.W.2d 200 (1995), stated that the sole purpose of the procedures outlined in section 28-9-209 is to determine intestate succession. The majority, however, discounts the court's ruling in that case by concluding that this holding is dicta and asserts, "Arkansas has consistently held that the subsequent marriage of the mother to the putative father and public acknowledgment by the putative father renders a child born out of wedlock legitimate." The only Arkansas authority used by the majority to support its assertion are two cases involving descent and distribution.

I do not believe the legislature intended to allow an acknowledgment of paternity five years after the birth of the child and a marriage by the mother to a man who neither claims nor has been found to be the biological father, to serve as a barrier preventing the grandparents from seeking visitation with their illegitimate grandchild.