2010 Ark. App. 240

**Tammy GOSSETT, Appellant**

**v.**

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
**Appellee.**

**No. CA 09–1224.**

Court of Appeals of Arkansas.

March 10, 2010.

Deborah Ruth Sallings, Arkansas Public Defender Commission, Little Rock, for appellant.

DAVID M. GLOVER, Judge.

In an order entered August 25, 2009, the Craighead County Circuit Court terminated the parental rights of appellant, Tammy Gossett, to her son, D.M., whose date of birth is December 6, 2007. Ms. Gossett's appellate counsel has moved to withdraw from this case and has filed a no-merit brief pursuant to *Linker–Flores v. Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004) and Supreme Court and Court of Appeals Rule 6–9(i), asserting that there are no issues that would support a meritorious appeal. Pursuant to Rule 6–9, the court clerk has mailed to appellant a copy of her counsel's motion and brief, informing her of her right to file pro se points for reversal. She has not done so. We affirm the termination of Ms. Gossett's parental rights and grant counsel's motion to withdraw.

*Procedural Background*

This case can probably best be summarized by the trial court's conclusion that, although appellant's love for her child is obvious, she is not able to take care of herself, much less her child. D.M. was born on December 6, 2007, and the petition for emergency custody was filed on December 11, 2007, based upon allegations that appellant was naked in her hospital room, with her stepfather and the newborn present, and that she yelled at the newborn to shut up because the baby would not stop crying, telling the nurse that she did not know what else to do. An order for emergency custody was filed on December 11, 2007, and the probable-cause order was filed on December 13, 2007. Following a hearing, the trial court entered its adjudication order, finding the child dependent-neglected, removing the child to DHS custody, and setting a goal of reunification. The order set forth the court's expectations of the mother. On April 29, 2008, the child's court-appointed attorney *ad litem* filed a motion for an order to terminate reunification services. A no-reunification hearing was held on

September 22, 2008, but the trial court found partial compliance by appellant and continued the reunification goal. The court noted that appellant was not able to maintain contact with her caseworker because she was incarcerated at the time. Review hearings were held throughout this period.

A permanency-planning hearing was held on December 9, 2008, and the resulting order was filed on March 18, 2009. The goal of reunification was continued but a concurrent ₃goal of termination was also set, with a decision on that goal deferred until the next hearing. The next hearing in this case was the fifteen-month review hearing; the resulting order determined that return of the child to appellant was contrary to his best interests and changed the goal to termination and adoption. The order contained typographical errors, which the trial court subsequently corrected to show that DHS had complied with the case plan, making reasonable efforts to deliver reunification services, and that appellant had not complied with the plan and the court's orders.

On May 1, 2009, DHS filed a petition to terminate appellant's parental rights, alleging that the child had been adjudicated dependent-neglected and had been out of appellant's custody for twelve months or more, and that despite meaningful efforts to correct the conditions that caused removal, appellant had not remedied those circumstances. In addition, DHS alleged that appellant had failed to obtain stable housing, that she did not have adequate income to support the child, that she did not attend counseling regularly or take her medication, and that she did not have transportation and did not make use of available public transportation. Finally, DHS alleged that other factors had arisen since the original petition had been filed, which also demonstrated that return of the child was contrary to his best interests and

that appellant had demonstrated an incapacity or indifference to remedying those subsequent conditions. On May 9, 2009, appellant filed a petition for permanent relative custody, seeking placement with the child's maternal aunt if custody was not to be returned to appellant. In answering the petition for termination, appellant asserted a constitutional challenge to Arkansas Code Annotated section 9–27–341, as applied, on due-process grounds.

₄The termination hearing was held on July 21, 2009. DHS presented evidence of the services that had been provided to appellant under the case plan, and appellant testified in defense of no termination. In its resulting order, the trial court determined that, by clear and convincing evidence, DHS had proved that appellant's parental rights should be terminated. The trial court also denied appellant's petition for alternative relative custody. Appellant made no further constitutional argument at the hearing; no ruling was obtained. The termination order was entered on August 25, 2009, and the notice of appeal was filed on September 1, 2009.

### Standard of Review

As explained in *Smith v. Arkansas Department of Health & Human Services,* 100 Ark. App. 74, 81, 264 S.W.3d 559, 564 (2007):

Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.,* 98 Ark. App. 328, 255 S.W.3d 505 (2007). Grounds for termination of parental rights must be proven by clear and convincing evidence. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation

sought to be established. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

In *Emmert v. Arkansas Department of Human Services,* 2010 Ark. App. 128, 374 S.W.3d 104, 106, we further explained:

An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl.2008). Factors to consider in determining best interest are the likelihood of adoption and potential harm caused by returning the child to the custody of the parent. *Id.* Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark. Code Ann. § 9–27–341(b)(3)(B) (Repl. 2008). The purpose of terminating a parent's rights to his or her child is to provide permanency in the child's life where returning the juvenile to the family home is contrary to the child's health, safety, or welfare, and it appears that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark.Code Ann. § 9–27–341(a)(3) (Repl.2008). We do not reverse a termination order unless the trial court's findings were clearly erroneous. *Meriweather v. Arkansas Dep't of Health & Human Servs.,* 98 Ark. App. 328, 255 S.W.3d 505 (2007).

### Sufficiency of the Evidence

■ Here, DHS had adoption as its placement plan for the child; it was appropriate because the evidence was that the child was not only "adoptable" but that a specific family was interested in adopting him. Moreover, the evidence supported the determination that the child faced potential harm if he were returned to appellant. The child had been removed just days after his birth; even when appellant made some improvements in her situation, it was with great help and she then could not maintain them; her living conditions were not acceptable, and she could not master the tasks of obtaining financial assistance to better those conditions; and she exhibited mental-health issues: inability to control her anger, demonstrating impulsiveness, and inability to master simple child-care tasks. In addition, DHS was required to establish at least one statutory ground for termination, and the trial court concluded that two had been established: a) the child had been out of appellant's custody for at least twelve months and DHS had made a meaningful effort to rehabilitate appellant and correct the conditions that caused removal, yet despite those efforts, she had not remedied the conditions (§ 9–27–341(b)(3)(B)(i)(a)); and b) other factors or issues had arisen after the filing of the original dependency-neglect petition that demonstrated return of the child would be contrary to the child's welfare (§ 9–27–341(b)(3)(B)(vii)).

In short, after reviewing all of the evidence in this case, the trial court concluded that the termination of appellant's parental rights was in D.M.'s best interest, considering the strong likelihood that he would be adopted and the potential harm of him having continuing contact with appellant because she was unable to maintain acceptable living arrangements, unable to perform even the most basic of parenting functions during visitation, such as properly measuring formula, and unwilling to attend counseling and take her medication, without which she had trouble controlling

her anger and impulsiveness. In addition, the trial court concluded that DHS had established by clear and convincing evidence that D.M. had been out of appellant's custody for at least twelve months, and that, despite meaningful efforts to rehabilitate appellant to correct the conditions that caused removal, appellant had not remedied those conditions.

A parent's failure to appeal from determinations that DHS made reasonable efforts to rehabilitate precludes that argument in an appeal from the termination of parental rights, *Jones–Lee v. Arkansas Dep't of Human Servs.*, 2009 Ark. App. 160, 316 S.W.3d 261; appellant did not appeal from those findings throughout the case. Moreover, the evidence of DHS's meaningful efforts to rehabilitate appellant was clear: offering psychological evaluations, arranging for counseling, helping with transportation, loaning her money for medication, assisting with paperwork for HUD, instructing about formula preparation, and providing parenting classes. Even though the satisfaction of only one statutory ground is sufficient to terminate parental rights, the trial court also concluded that DHS had proven by clear and convincing evidence that other factors or issues had arisen after the filing of the dependency-neglect petition that demonstrated it would be contrary to D.M.'s welfare to return him to his mother and that despite the offer of appropriate family services, appellant had demonstrated the incapacity to remedy the subsequent factors/issues. The evidence of appellant's mental deficiencies established that she was not able to overcome her limitations to be able to properly care for D.M.

### Other Adverse Rulings

Appellant's counsel discussed the other rulings made by the trial court and explains why they would not support a meritorious appeal. We agree.

Appellant initially raised a constitutional challenge; however, she did not pursue the argument and did not obtain a ruling on it from the trial court. Consequently, the issue was waived and would not provide a basis for a successful appeal.

In an abundance of caution, counsel also discusses several evidentiary rulings made by the trial court concerning some misdemeanor offenses allegedly committed by appellant. While the trial court initially allowed certified documents concerning the offenses to be introduced, it reversed those rulings and did not allow the evidence once it became clear that the documents did not establish convictions for those offenses. Consequently, these rulings were actually not adverse to appellant.

Finally, counsel addresses the trial court's denial of appellant's request to place D.M. in the permanent custody of her sister, Sharon Britt. At the termination hearing, it was clear that the sister had not taken the necessary steps to establish the suitability of her home for D.M.; further, she did not appear at the hearing. As noted by counsel, no error can be predicated on the trial court's failure to order a placement where the proposed family has expressed no interest in such a placement.

Based on our review of the record and the brief submitted to us, we conclude that there has been full compliance with Rule 6–9(i) and that the appeal is without merit. Appellant's counsel's motion to be relieved is granted, and the decision to terminate appellant's parental rights is affirmed.

Affirmed; motion to withdraw granted.

ROBBINS and MARSHALL, JJ., agree.