2010 Ark. App. 645

**Krystal IVY, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES & Minor Children, Appellees.**

**No. CA 10–496.**

Court of Appeals of Arkansas.

Sept. 29, 2010.

Deborah Ruth Sallings, Little Rock, for appellant.

DAVID M. GLOVER, Judge.

⌊₁Appellant, Krystal Ivy, appeals the termination of her parental rights to her children, J.M., born January 6, 2004, and M.I., born September 22, 2005.[1] Pursuant to *Linker–Flores v. Arkansas Department of*

---

1. The parental rights of J.M.'s father, Larry Maple, a/k/a Matthew Furr, were also terminated at this hearing; however, Maple has filed no appeal of this decision. Despite counsel's assertion to the contrary, the parental rights of M.I.'s father, David Dennington, were not terminated at this hearing; rather, the trial court announced at the conclusion of the termination hearing that the issue of Dennington's parental rights would be determined at a later date.

*Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004) and Arkansas Supreme Court Rule 6–9(i), Ivy's attorney has filed a no-merit brief asserting that there are no issues that would support a meritorious appeal and requesting to be relieved as counsel. The clerk of this court provided Ivy with a copy of counsel's motion and brief and notified |₂her of her right to file pro se points of appeal, which Ivy has done. We affirm the termination of Ivy's parental rights and grant counsel's motion to withdraw.

### Sufficiency of evidence for termination

■■■ Termination-of-parental-rights cases are reviewed de novo. *Hune v. Arkansas Dep't of Human Servs.,* 2010 Ark. App. 543, 2010 WL 2612681. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Arkansas Dep't of Health & Human Servs.,* 98 Ark. App. 328, 255 S.W.3d 505 (2007). Grounds for termination of parental rights must be proven by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Hughes v. Arkansas Dep't of Human Servs.,* 2010 Ark. App. 526, 2010 WL 2522197. The appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *J.T. v. Arkansas Dep't of Human Servs.,* 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

■ In order to terminate parental rights, a trial court must find by clear and convincing evidence (1) that termination is in the best interest of the juvenile, taking into consideration the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, |₃caused by returning the child to the custody of the parent. Ark.Code Ann. § 9–27–341(b)(3)(A)(i), (ii) (Repl.2009). Additionally, the trial court must find by clear and convincing evidence that one or more statutory grounds for termination exists. *See* Ark.Code Ann. § 9–27–341(b)(3)(B) (Repl. 2009). Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Arkansas Dep't of Human Servs.,* 2010 Ark. App. 240, 374 S.W.3d 205.

The trial court terminated Ivy's parental rights on two grounds—Ark. Code Ann. § 9–27–341(b)(3)(B)(i) (*a*) (juvenile adjudicated dependent-neglected and out of the custody of the parent for twelve months and despite meaningful effort by DHS to rehabilitate parent and correct conditions causing removal such conditions had not been remedied), and Ark.Code Ann. § 9–27–341(b)(3)(B)(vii) (*a*) (other factors arose subsequent to filing of the original petition for dependency-neglect demonstrating return of juvenile to custody of parent was contrary to juvenile's health, safety, or welfare and despite offer of appropriate family services, parent has manifested incapacity or indifference to remedy those issues or factors or rehabilitate circumstances that prevent return of juvenile to custody of parent).

■ Here, the trial court found that there was a high likelihood that the children would be adopted based upon the testimony from the DHS family-service worker that there had been an expression

of interest in adopting the children if the termination petition was granted. Furthermore, the trial court found that there was potential harm to the health and safety of the children if they were returned to Ivy because she did not have an adequate place to live and she did not have sufficient income to care for the children. At the time of the termination hearing, Ivy was unemployed and living with an ex-boyfriend and his mother in a three-bedroom house. She had moved there nineteen days prior to the termination hearing, and she had lived in six or seven different places prior to that. This evidence is sufficient to support the trial court's finding that termination of Ivy's parental rights was in the children's best interests.

■ There is also sufficient evidence to support the trial court's findings regarding the grounds for termination of parental rights. Ivy's children were taken into DHS custody on an emergency basis on August 6, 2008, due to the condition of Ivy's home; an emergency order placing the children in DHS custody was entered on August 11, 2008. An order entered on August 28, 2008, found probable cause that the emergency conditions that necessitated removal of the children from Ivy's custody continued and that it was contrary to the welfare of the children to be returned to Ivy. In this order, Ivy was instructed to, among other things, obtain and maintain stable and appropriate housing that was clean and hazard free and to attend weekly counseling sessions. On November 24, 2008, an adjudication order was entered finding the children dependent-neglected and continuing custody with DHS. Ivy was ordered to attend biweekly counseling and to comply with prior orders of the court.

In an order filed January 16, 2009, the trial court continued custody with DHS and ordered Ivy to submit to a psychological evaluation; to submit to a drug and alcohol assessment; to obtain and maintain stable and appropriate housing; to obtain and maintain stable and gainful employment; to attending counseling; and to allow DHS to enter her home for homemaker services and to comply with such services. A review order, filed April 2, 2009, held that return of the juveniles was contrary to their welfare and continued custody with DHS. The trial court also found that while Ivy had completed a psychological evaluation, she had not been attending counseling, had given up her Section 8 housing to move in with her boyfriend, and had sold her car. The trial court ordered Ivy to comply with the case-plan recommendations, the psychological evaluation, to obey all court orders, and to obtain and maintain some form of employment. Another review hearing was held on May 18, 2009, and in the order filed on June 22, 2009, the trial court found that it was necessary to continue custody with DHS; that Ivy had failed to maintain Section 8 housing; and that she had no transportation. The trial court again ordered Ivy to obtain a suitable home and obtain and maintain employment.

A permanency planning hearing was held on September 14, 2009, at which time the goal of the case was changed to termination of parental rights and adoption, although DHS was ordered to continue reunification services and to have a secondary DHS worker make weekly visits to Ivy's home. DHS filed a petition for termination of parental rights on October 27, 2009, alleging the grounds set forth above in this opinion.[2]

---

2. DHS also alleged that Ivy had failed to provide material support in accordance with her means; however, the trial court did not find this allegation as a ground for terminating Ivy's parental rights.

At the termination hearing, held January 19, 2010, evidence revealed that Ivy had lived in six or seven different places since the beginning of the case. At the time of the termination hearing, Ivy had been living with her ex-boyfriend and his mother in a three-bedroom house for nineteen days, paying $78 per week in rent. She had failed to notify DHS or CASA of her move. Each of the adults had one bedroom in the house. Ivy testified that she was going to stay there and pay off her debts and then look for a permanent residence.

Ivy stated that she received $664 per month in disability; that she paid at least half of her income in rent; that she owed her former landlord $375 and utility bills of approximately $800; and that due to her failing to notify Section 8 Universal Housing that she lost custody of her children, she owed HUD between $3000 and $4000. Ivy was not employed at the time of the termination hearing, and she had only been employed sporadically throughout the pendency of the case. Furthermore, Ivy admitted that she had not attended counseling as ordered. The trial court terminated Ivy's parental rights at the end of the hearing.

This case had been open since August 2008. The children were removed based upon the conditions of Ivy's home. In January 2010, almost a year and a half later, Ivy had still failed to obtain and maintain a stable home. She had lived in numerous places during the pendency of the case, and at the time of the termination hearing, she was living with an ex-boyfriend and his mother and had only been there for nineteen days. Ivy had made no progress toward providing a stable, appropriate home for her children, which was the reason that the children were removed in the first place. Also, after the case began, Ivy was instructed to attend counseling and obtain employment. She has done neither. This constitutes sufficient evidence to support both grounds the trial court found for terminating Ivy's parental rights.

### Other adverse rulings

There were two additional rulings that were adverse to Ivy; both were relevancy objections. In the first instance, the trial court sustained the attorney ad litem's objection to Ivy's questioning of a DHS worker about whether it "bothered" her that DHS could not provide more assistance than a referral to the housing authority for a person with housing issues. In the second instance, the trial court sustained the attorney ad litem's objection to Ivy's questioning of the same DHS worker about the failure to collect child support from the fathers of Ivy's children, finding that even if child support had been ordered, Ivy would not have received it because the children were not in her custody.

Evidentiary rulings are reviewed under the abuse-of-discretion standard. *Tadlock v. Arkansas Dep't of Human Servs.*, 2009 Ark. App. 821, 373 S.W.3d 361. Relevant evidence is "evidence having any tendency to make the evidence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. Here, the trial court did not abuse its discretion in either case. The answers to the questions asked by Ivy had no relevance on the issue of whether Ivy was following the orders of the trial court and was making progress toward life choices that would allow her to regain custody of her children.

### Ivy's pro se points

Ivy filed her pro se points with this court on July 8, 2010. In those points, Ivy asserted that she had made enough

progress for her children to be returned to her custody. She stated ₈that she was attending counseling, had a job, was making payments on a car, and had an apartment that she kept clean. While these are Ivy's assertions, at the time of the termination hearing, she was not attending counseling, did not have an appropriate home for the children, and was not employed. While Ivy also contends, without any supporting argument, that she was not given a fair trial, the evidence clearly refutes that argument. The trial court gave Ivy seventeen months to make the changes required of her by DHS before she could regain custody of her children, as discussed extensively above, and she failed to do it.

Finally, Ivy contends that Deborah Sallings should remain her attorney and that her appeal should be in the county where she resides. Sallings is Ivy's attorney; she has reviewed the record and found no meritorious issue for appeal and therefore filed this no-merit brief. Sallings has filed a motion to be relieved as Ivy's counsel, a motion that this court is granting in this opinion. As for the statement that the appeal should be in the county where Ivy resides, all appeals are lodged in Little Rock, Arkansas, regardless of where an appellant resides.

Affirmed; counsel's motion to withdraw granted.

GLADWIN and ABRAMSON, JJ., agree.