2011 Ark. App. 106

**Heather DAWSON, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES & Minor Children, Appellees.**

**No. CA 10–1055.**

Court of Appeals of Arkansas.

Feb. 9, 2011.

Thomas B. Wilson, for appellant.

No response.

DAVID M. GLOVER, Judge.

Appellant, Heather Dawson,[1] appeals the termination of parental rights to her children, E.J., born April 18, 2003; P.J., born June 18, 2004; and C.J., born March 3, 2006.[2] Pursuant to *Linker–Flores v.*

---

1. Appellant stated at the March 8, 2010 hearing that her legal name was Heather Jacobs; however, in this opinion, we will refer to her by her prior name of Heather Dawson, under which the case was styled when filed.

2. Listed as putative fathers of each child are Torrence Bauder, Brian Giles, and Roy Sutton. The parental rights of these men were terminated in the same proceeding as Dawson's parental rights; the men have not appealed those terminations.

*Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004) and Rule 6–9(i) of the Rules of the Supreme Court and Court of Appeals of the State of Arkansas, Dawson's attorney has filed a no-merit brief asserting that there are no issues that would support a meritorious appeal and a motion requesting to be relieved as counsel. The clerk of this court provided Dawson with a copy of her counsel's motion and brief and notified Dawson of her right to file pro se points of appeal, which Dawson has done. We grant counsel's motion to withdraw and affirm the termination of Dawson's parental rights.

Termination-of-parental-rights cases are reviewed de novo. *Hune v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 543, 2010 WL 2612681. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.,* 98 Ark. App. 328, 255 S.W.3d 505 (2007). Grounds for termination of parental rights must be proven by clear and convincing evidence. *Hughes v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 526, 2010 WL 2522197. The appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.,* 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

*Sufficiency of evidence for termination*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark.Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Repl.2009). Additionally, the trial court must find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(B) (Repl. 2009). Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Arkansas Dep't of Human Servs.,* 2010 Ark. App. 240, 374 S.W.3d 205.

In the present case, the trial court terminated Dawson's parental rights on two grounds—Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(*a*) (juveniles have been adjudicated dependent-neglected and have continued out of the custody of the parent for twelve months and, despite meaningful efforts by DHS to rehabilitate the parent and correct the conditions causing removal, the conditions have not been remedied by the parent); and Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*) (other factors or issues arose subsequent to the filing of the original petition for dependency-neglect demonstrating that return of the juveniles to the parent's custody is contrary to the juveniles' health, safety, or welfare and despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances that prevent return of the juvenile to the custody of the parent).

Here, the trial court found that there was a great likelihood that the children would be adopted, based upon testimony from the adoption specialist, who

testified that there were over ten families willing to adopt children of similar sibling groups, ages, and activity levels. Additionally, the trial court found that there was potential harm to the health and safety of the children if they were returned to Dawson's custody due to her failure to maintain a sober and stable lifestyle for herself, and because she did not have a home or employment. The trial court noted that, other than passing her drug screens since October 2009, Dawson was in no better a position than when the children were removed. These findings are sufficient to support the trial court's "best interests" determination, *i.e.*, that termination of Dawson's parental rights was in the children's best interests.

■■ We also find no error with regard to the grounds found by the trial court to terminate Dawson's parental rights. Dawson's children were taken into DHS custody on an emergency basis on January 3, 2009, when officers found them locked in a house without an adult. Dawson was outside, with blood on her face, hands, and clothes, and she was argumentative and uncooperative with the responding officers. A crack pipe and marijuana were found close to where the children were standing, another crack pipe was found near the children's toys, and a marijuana pipe was found on Dawson's person. Dawson was taken to jail; when a DHS worker arrived for the children, she found the house in disarray, with dirty clothes and trash covering the floors. Pieces of glass were on the floor, and two of the children were observed playing in the glass with no socks or shoes on their feet. A petition for emergency custody and dependency/neglect was filed on January 7, and an order for emergency custody was issued that same day.

Sequentially, a probable-cause order was then filed January 14, 2009, continuing custody of the children with DHS and ordering Dawson to see a psychiatrist; have a psychological evaluation; complete parenting classes; attend inpatient counseling; and acquire stable housing and employment. On March 4, 2009, the trial court adjudicated the children dependent/neglected. In a review order filed on June 24, 2009, Dawson was further ordered, among other things, to attend parenting classes, attend counseling and follow any recommendations; submit to random drug screens; remain drug free; undergo an alcohol and drug assessment and follow the recommendations; complete residential drug/alcohol treatment and follow the recommendations; attend outpatient drug treatment after residential treatment; attend AA/NA five times per week and provide sign-in sheets; undergo a medication assessment and follow the recommendations; take prescribed medications; maintain stable and suitable housing; maintain stable employment; attend DHS staffings; comply with the case plan; cooperate and maintain contact with DHS; maintain reliable transportation; refrain from criminal or illegal activity; seek assistance for a divorce; and follow Dr. Paul Deyoub's recommendations from her earlier psychological evaluation. Also, in the review-hearing order, the trial court found that Dawson had been arrested on drug charges; that she and her husband had been selling plasma for income; that she had tested positive for cocaine; that she had not completed parenting classes; that she did not have a home; and that she was still married to her husband. Further, the trial court found that based upon her psychiatric evaluation, she was an unlikely candidate for reunification with her children.

A permanency-planning hearing was held on December 16, 2009. DHS filed a

petition for termination of parental rights that same day. In the permanency-planning order, the trial court found that it was in the children's best interest to continue custody with DHS, as it was [6]contrary to their best interest, welfare, health, and safety to be returned to Dawson. Dawson was again ordered to comply with various orders of the court. The trial court found that Dawson had not been compliant, including having been discharged from the Crisis Intervention Center because she arrived at the center intoxicated.

At the termination hearing on June 28, 2010, Dawson testified that she had divorced her husband and was living in a one-bedroom house with a friend. She admitted that there would not be enough room for her children at the house if they were returned to her that day, but that she was on the HUD housing list and was looking for work so that she could afford housing. She said that she had not been employed since January, but she had trouble finding work because she had no work history and was a felon. She admitted that she had not been looking for work in Little Rock. Dawson said that she had stopped seeing her therapist because they did not "see eye-to-eye"; that she did not have a new therapist; that she was bipolar; and that she needed to find a new psychiatrist so that she could obtain more medication. Dawson estimated that she would need an additional four to six months before she would be ready to have her children back. She admitted that she had relapses with both alcohol and methamphetamine, having used methamphetamine in October 2009 with strangers who offered it to her at a gas station. She also recounted her legal troubles, which included unpaid fines in Conway, Mayflower, and Sherwood; the fact that she was currently on probation; and the fact that she did not have a valid driver's license but drove anyway.

Erika Lester, a family-service worker, testified that she believed it was in the children's best interest for Dawson's parental rights to be terminated. She said that Dawson had failed [7]to participate in individual therapy since February, that Dawson would not be in a position to regain custody at any time in the near future, and that the children needed permanency. Lester's opinion was that even if Dawson had an appropriate place to live and sufficient income to provide for the children, she still could not safely maintain the children in her home.

This evidence is sufficient to support both grounds on which the trial court terminated Dawson's parental rights. At the termination hearing, Dawson had no employment, no acceptable home for the children, and she was still experiencing relapses with alcohol and methamphetamine.

### Other adverse rulings

■ There was only one additional ruling adverse to Dawson. During the cross-examination of Erika Lester, Dawson's attorney asked Lester about Dawson's use of methamphetamine in October 2009 at the gas station. Lester agreed that Dawson had informed her about the relapse, and had Dawson not done so, DHS would not have known about it. Dawson's attorney then asked Lester if she thought that Dawson should get "any credence" for having reported herself. The attorney ad litem objected, stating that it was not about whether the mother should get any "perks," it was about the best interest of the children. The trial court sustained the objection. This adverse ruling provides no reversible error.

Evidentiary rulings are reviewed under the abuse-of-discretion standard. *Ivy v. Arkansas Dep't of Human Servs.*, 2010 Ark. App. 645, 378 S.W.3d 234. Relevant

evidence is "evidence having any tendency to make the evidence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. The attempt by Dawson's counsel to give Dawson "points" for self-reporting her use of illegal drugs was not relevant to whether Dawson had been adhering to the orders of the trial court and making the necessary changes in her life that would allow her to be reunited with her children.

### Dawson's pro se points

Dawson has compiled a list of eight reasons why this court should reverse the termination of her parental rights: (1) she has maintained a drug—and alcohol—free life for over a year; (2) she now has a stable income; (3) all of her legal issues have been dealt with and are current; (4) one reason for termination was for the children to have a permanent home, but one of her sons was moved five times in the first year of care; (5) both of her sons have been sexually abused since coming into DHS care; (6) she was not given credit for the positive things she did for her children while they were in her custody; (7) only two of the reasons for termination were proven to have merit; (8) one reason for termination was the failure to take anger-management classes, but that requirement was not added until the termination hearing in July 2010.

■ None of these points require reversal. While Dawson claims that she is now drug and alcohol free, has a job, and has taken care of her legal issues, the evidence at the termination hearing indicated that she still had alcohol and drug issues, was not employed, and had outstanding legal problems. While it is commendable if Dawson has indeed made improvements in her life, they have come too late with regard to the termination of her parental rights. Dawson was given a year and a half to correct the problems that caused the removal of her children, and she failed to do so in that period of time.

■ Dawson contends that one son has been moved numerous times and both sons have been sexually abused while in DHS custody. While there was testimony that one son was abused in a foster home, there was also testimony that DHS interceded to rectify the problem and to make sure that the child received appropriate therapy. Furthermore, even if true, these facts have no bearing on whether the trial court correctly terminated her parental rights.

Dawson also contends that she was not given credit for the positive things she did for her children while they were in her custody. As discussed above, that is not dispositive of the issue of whether Dawson should have her parental rights terminated. At the time of the termination hearing, a year and a half after her children were removed from her custody, Dawson was not working; did not have adequate housing for the children; had quit seeing her psychiatrist; did not have a valid driver's license; was delinquent in fines and court costs in several cities; and would, by her own estimate, need another four to six months before she was ready to have her children. That evidence clearly supports the trial court's decision to terminate Dawson's parental rights. Dawson further contends that only two grounds were proven to have merit; however, DHS must prove only one ground to terminate parental rights. *Gossett, supra.*

■ Lastly, Dawson argues that one reason for the termination of her parental rights was the failure to take anger-management classes, but that requirement was not added until the termination hearing in July 2010. It appears that she is cor-

rect that anger-management classes were not mentioned in the orders prior to the order terminating her parental rights. However, this is not a reversible error. The other evidence of Dawson's failure to abide by the orders of the trial court, as discussed above, provides sufficient evidence to support the termination of her parental rights.

Counsel's motion to withdraw is granted and termination of appellant's parental rights is affirmed.

ROBBINS and WYNNE, JJ., agree.