Cite as 2021 Ark. App. 159

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-20-649

| | |
|---|---|
| | **Opinion Delivered** April 14, 2021 |
| DEMETRIC FOWLER<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT [NO. 40JV-19-12]<br><br>HONORABLE EARNEST E. BROWN, JR., JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Demetric Fowler appeals the termination of his parental rights to his two children. (Marshay Johnson, the children's mother, is deceased.) Fowler challenges both the statutory grounds for termination and the circuit court's best-interest finding. We affirm the circuit court's order.

On 1 April 2019, the Arkansas Department of Human Services (DHS) removed two-year-old twins BF1 and BF2 from their mother's custody. Johnson admitted that she had been using marijuana and ecstasy pills and that she was unable to take care of the children. DHS placed the children in the home of Gail Knight; the children had been staying with Knight on and off since November 2018.[1] Fowler was identified as the children's putative

---

[1]Knight is the mother of Johnson's boyfriend.

father. DHS petitioned the Lincoln County Circuit Court for emergency custody of the children, which was granted.

The probable-cause order noted that Johnson had stipulated to probable cause and appointed legal counsel to represent both Johnson and "the father." Fowler and his attorney attended the adjudication hearing, and the adjudication order found that Fowler had "presented evidence proving that he has established significant contacts with the juvenile[s]" and that his "rights as a putative parent have attached." The court ordered DHS to provide Fowler with a psychological evaluation and ordered Fowler to visit the children regularly. The court adjudicated the children dependent-neglected based on neglect.

The court conducted a review hearing in September 2019; the resulting order found that Fowler had been partially compliant with the case plan and orders of the court and had been attending outpatient drug treatment and counseling. However, he continued to test positive for THC. The court noted that Fowler's visitation would continue to be supervised as long as he continued to test positive for illegal substances.

The court scheduled a permanency-planning hearing in March 2020, but it was rescheduled for 11 May 2020 due to COVID-19. The May 11 hearing was not held, however, because the parties had reached an agreement to place the children in the permanent custody of Gail Knight. Before the agreement could be signed by all parties, Johnson was stabbed and died from her injuries. On 2 June 2020, DHS requested a special hearing to address the situation.

The circuit court convened a hearing on June 4, and Fowler stated that he wanted to accept responsibility for the children and participate in the case. He expressed concern with the children's placement with Knight because she and her son were currently under

2

investigation for Johnson's death. The court ordered DHS to find a new temporary placement for the children and ordered Fowler to strictly comply with the case plan and orders of the court. (This order was not entered until 3 August 2020.)

Just over a month after the hearing, on 6 July 2020, DHS petitioned to terminate Fowler's parental rights on two grounds: (1) the juveniles had been adjudicated by the court to be dependent-neglected and had continued to be out of the custody of the noncustodial parent for twelve months, and despite meaningful efforts by DHS to rehabilitate the parent and correct the conditions that prevented the children from safely being placed in the parent's home, those conditions had not been remedied by the parent; (2) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b) & (vii)(a) (Repl. 2020).

In his response to the petition, Fowler argued in part that DHS had focused on providing services to Johnson, not to him, and that he had "attempted to do all things asked of him to be able to obtain custody of the minor children[.]"

The circuit court convened a hearing on 10 August 2020. Fowler testified that the children had been in foster care over half their lives because their mother had a drug problem. He said that he had been somewhat involved "in and out of court here." He stated that he had completed a psychological evaluation but had not been to counseling in

3

several months. He acknowledged that at the last hearing, the court had ordered him to attend counseling, but he said he had been focused on getting his home ready for the children. He also said he had a prescription for medical marijuana and had been using marijuana. He agreed that at his psychological evaluation in July 2019, he had told the doctor that he attempted suicide by hanging. He also agreed that he had posttraumatic stress disorder, which is why he smokes marijuana. When asked if he had verifiable employment, Fowler said he works for himself, and he stated that he does not have a bank account, a valid driver's license, or a vehicle. He confirmed that DHS had offered him parenting classes, a psychological evaluation, and referrals for substance-abuse treatment and mental-health treatment. On cross-examination, he said that he would return to counseling after his house was finished. He stated that his house was not currently appropriate for the children, but it was "85 percent ready." He said it would be ready in "[a] very short time."

Felicia Cobb, the family service worker, testified that the children had never resided with their father. She said that he did not have a significant relationship with the children and that he had generally not made himself available for services from DHS. Cobb explained that the children were currently placed with their step-grandmother and that she had been exercising visitation with the children while they were in foster care. Cobb said that the children have special needs and are receiving some occupational and physical therapies. Cobb opined that it is in the children's best interest to have permanency and to be in a stable, safe environment. She also expressed concern with Fowler's mental-health situation. On cross-examination, Cobb stated that DHS had tried to visit Fowler's home but he was not living there and had not responded to texts and phone calls.

4

Kimberly Johnson, an adoption specialist, testified that the adoption database had identified 258 possible adoption matches for the children and that she saw no barriers to DHS finding a permanent placement for them.

Bea Buck, Fowler's fiancée, testified that she and Fowler had been working on his house but that several issues, such as electrical outlet covers and some plumbing, still needed to be addressed. She expressed willingness to undergo a background check by DHS. She explained that she is employed in New York but had been in Arkansas taking care of her brother. Buck said she and Fowler planned to be married but had not set a date. She stated that she and Fowler had known each other approximately six months.

From the bench, the circuit court ruled that DHS had proved the failure-to-remedy statutory ground for termination and that termination was in the children's best interest. The court's written order included the following findings:

> The court finds that the juveniles have been in foster care for more than half of their life. Though they were not removed from his custody either time they have been placed into foster care, the father has been given every opportunity to be involved and to gain custody of them. In 2017, the Court found him to be the legal father and was glad to see him involved in the case. However, he just disappeared in early 2018 through the closure of the case in November of 2018. It was less than six (6) months later that they were removed from their mother again.

> In this case that opened in April of 2019, the father appeared before the Court in May of 2019 and the Court was very clear that the father needed to remain involved and had a very good opportunity to obtain custody due to the mother's long history with the Department and the Court with her older children. Despite services being offered by the Department, he again disappeared from September 2019 until the mother's murder in late May of 2020. Only then did Mr. Fowler appear again. He attempted to claim that the Court and DHS were only working towards reunification with the mother, but there is no reason the father should have deferred to her knowing her history.

He admitted a life-long history of mental health issues and still refused to complete mental health treatment. He admitted an attempted suicide and still refused to complete mental health treatment. He has put getting a safe house in place before addressing the other severe issues that prevent reunification. He has no steady source of verifiable income. He has no bank account. He has no driver's license. He has no transportation. He has only recently obtained a home and is still trying to get plumbing installed and the home ready for children. He has consistently tested positive for marijuana and only since July 1, 2020 has he obtained a prescription for it. He claims it is for PTSD, yet he still has not completed mental health treatment. He has not been visiting the children, and it is time they have permanency. The Court is no longer willing to look at giving him more time. The Court has to look at the best interest of the juveniles from a timeframe consistent with their needs. They have been in foster care for most of their life, and despite opportunities for services and pep talks by the Court, placement with the father cannot safely happen.

The court also found that the children are adoptable and that they faced potential harm if placed with Fowler "because he is still not addressing his mental health issues and still has no stability to provide for their needs." Fowler has timely appealed from this order.

A circuit court's order that terminates parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. *Dinkins, supra.* Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205.

On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Dinkins, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly

erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Id.*

## I. *Statutory Factors*

Although the circuit court terminated Fowler's parental rights based only on the failure-to-remedy ground, he addresses both grounds pled by DHS in its termination petition. On the failure-to-remedy ground, Fowler contends that DHS failed to prove that he was a "parent for the twelve-month time period." Arkansas Code Annotated section 9-27-303(40) (Repl. 2020) defines a parent as "a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to § 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile." And according to Fowler, *Earls v. Ark. Dep't of Human Services*, 2017 Ark. 171, 518 S.W.3d 81, established that "the twelve-month time period does not begin to run until the moment the father was established as the parent."[2]

In his case, Fowler argues, he was originally identified as a putative father and was not identified as a party or a "parent" until DHS filed its 2 June 2020 motion for a special hearing. The permanency-planning order, filed on July 27, listed Fowler as a parent and identified him as the children's legal parent. But this was less than a month before the

___

[2]The majority opinion in *Earls* stated in a footnote that "[e]ven assuming that the dissent is correct that the circuit court's vague statement in the March 30, 2016 termination hearing, 'I have ... DNA test results with Mr. Earls at a 99.9 percent probability that he's the father of the twins,' established that Earls was the legal father, the 12–month statutory requirement has not been met." *Earls*, 2017 Ark. 171, at 11 n.2, 518 S.W.3d at 88 n.2. It is not at all clear that the supreme court meant what Fowler is now suggesting.

termination hearing on August 10. Thus, Fowler contends that he had not been recognized as a parent for the requisite twelve months at the time of the termination hearing.

In addition, he challenges the meaningful-effort element of the failure-to-remedy ground and the offer-of-appropriate-services element of the subsequent-factors ground pled by DHS. He asserts that DHS failed to present sufficient evidence that it made the required efforts to provide necessary services to assist him in reunifying with his children. He contends, as he did below, that most of DHS's efforts had been directed toward Johnson, not him, and that the efforts that had been directed toward him had been insufficient to address his primary issues—lack of counseling and the status of his home. He admits his compliance with the case plan and court order was not "flawless" but argues that he expressed his willingness to do whatever was necessary to reunify with his children.

DHS first responds by citing an April 2018 domestic-relations order, which was entered into evidence at the termination hearing, that established Fowler as the children's father and set his child-support obligation. DHS also argues that Fowler's interpretation of *Earls* is inaccurate and notes that this court has previously rejected a similar argument:

> Elliott does not contest the fact that DHS proved that A.E.'s life was endangered. His only argument is that because paternity was not established before the incident and he was not made a party until October 20, 2017, Elliott "was not a parent" when the child was injured. This argument has no merit.
>
> The Juvenile Code's definition of "parent" includes a man who "has been found by a court of competent jurisdiction to be the biological father of the juvenile." Ark. Code Ann. § 9-27-303(40). We have explained that "paternity relates to the biological relationship between a man and child." *Ellis v. Bennett*, 69 Ark. App. 227, 230, 10 S.W.3d 922, 924 (2000). The biological relationship between Elliott and A.E., which was the basis for the circuit court's finding, was present from the moment A.E. was born—the circuit court's order did not create it. The statute does not say that the abuse or neglect must be perpetrated by "someone who has been legally adjudicated

8

to be the juvenile's parent prior to the event." It simply states "a parent," and under any plain reading of that term, Elliott was a parent from the day his child was born, even if the circuit court did not formally recognize him as such until later.

*Elliott v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 526, at 8–9, 565 S.W.3d 487, 492.

As to reasonable efforts, DHS notes that the circuit court specifically ordered that the goal of the case be "reunification with a fit parent," and the court repeatedly found that DHS had offered services to both parents and made reasonable efforts to achieve this permanency plan for the juveniles. Fowler never appealed any of these prior findings or raised a reasonable-efforts argument at the termination hearing. *See Phillips v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 565, 567 S.W.3d 502 (holding that appellant failed to preserve a meaningful-efforts argument because appellant failed to appeal earlier findings and failed to object at the termination hearing). The ad litem additionally notes that the evidence clearly and convincingly showed that Fowler was offered and took part in services and that he did not participate in more services because, according to the case worker's testimony, Fowler had generally not made himself available.

We hold that Fowler's argument that he was not a "parent" for twelve months prior to the termination is unavailing, given that the evidence showed he was declared the children's father in April 2018, over two years before the termination petition was filed. We also hold that the circuit court did not clearly err in finding that Fowler had failed to correct the conditions that prevented the children from safely being placed in his home. Because we affirm on this ground, we need not address Fowler's argument as it pertains to the subsequent-factors ground, as proof of only one statutory ground is sufficient to terminate parental rights. *Gossett*, *supra*.

9

In making a best-interest determination, the circuit court must look at all the circumstances, including the potential harm of returning the children to their parents' custody, specifically the effect on the children's health and safety, and it must consider the likelihood that the children will be adopted. Ark. Code Ann. § 9-27-341(b)(3). The harm referred to in the termination statute is potential harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *L.W. v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 44. The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Id.* Potential harm includes a child's lack of stability in a permanent home, and a court may consider a parent's past behavior as a predictor of future behavior. *Gonzalez v. Ark. Dep't Human Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915.

On appeal, Fowler does not directly challenge the circuit court's adoptability finding or its potential-harm finding. Instead, he asserts that he had been working diligently to complete his home, had worked to have his Medicaid reactivated so he could resume counseling, and had created a support system with his fiancée. He argues that the children were in the home of a relative and that "there was no evidence presented that giving [him] additional time to reunify with his children would be detrimental to the children."

DHS argues that because Fowler failed to cite any legal authority to support his argument, this court should reject it. It also asserts that in determining best interest, the circuit court may consider the same evidence introduced to support statutory grounds, and evidence of a parent's past behavior, such as drug use, may support a court's potential-harm finding due to its predictability of future behavior. *See Furnish v. Ark. Dep't of Human Servs.*,

2017 Ark. App. 511, at 13, 529 S.W.3d 684, 691 ("Furnish's continued drug use itself is sufficient to support the trial court's finding of potential harm.").

The goal of section 9-27-341 is to provide permanency in a child's life in circumstances in which returning the child to the family home is contrary to the child's health, safety, or welfare and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). A child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849; *see also Latham v. Ark. Dep't of Human Servs.*, 99 Ark. App. 25, 31, 256 S.W.3d 543, 547 (2007) ("[T]he trial court did not err in terminating Latham's parental rights to B.L. where Latham failed to prove that he could provide for one of B.L.'s most basic needs—a stable home.") We hold that the circuit court did not err in its best-interest finding and affirm.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Tabitha McNulty, Attorney at Law*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Service, Office of Chief Counsel, for appellee.

*Casey D. Copeland*, attorney ad litem, for minor children.