2013 Ark. App. 88

**Larry FENSTERMACHER, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellee.**

**No. CA 12–710.**

Court of Appeals of Arkansas.

Feb. 13, 2013.

Deborah R. Sailings, Arkansas Public Defender Commission, for appellant.

Tabitha Baertels McNulty, Office of Chief Counsel, for appellee Arkansas Department of Human Services.

Keith Chrestman, attorney ad litem for minor children.

RITA W. GRUBER, Judge.

Appellant Larry Fenstermacher's parental rights to his three daughters were terminated by order filed May 31, 2012, in Crawford County Circuit Court.[1] He contends on appeal that there was insufficient evidence to support the court's finding of grounds for termination. Although we agree that there is insufficient evidence to support the statutory ground stated in the court's order, the court's decision terminating appellant's parental rights was not clearly erroneous under an alternate ground alleged in the termination petition. Therefore, we affirm.

### I. Facts & Procedural History

The case began on August 25, 2010, when the Arkansas Department of Human Services (DHS) removed appellant's three children—H.F., born July 23, 2003; S.F., born January 1, 2004; and N.F., born March 29, 2006—from their mother's custody. Appellant did not live with the children and their mother. The removal occurred after the Van Buren Police Department investigated a call that a three-year-old child was playing in a busy street alone. When the police arrived and attempted to ensure the child's safety, they discovered that the child's home contained open wiring, falling ceilings, clothing on the floor, dirty diapers, trash strewn throughout the home, and dirty dishes and rotting food on the counters. The police called DHS, which took appellant's three children and four more of Ms. Huddleston–Clifton's children into custody. The DHS worker noticed that there was little food in the house, that there were roaches in the kitchen, and that the children were extremely dirty and unkempt. Ms. Huddleston–Clifton tested positive for marijuana and admitted to its use.

The court entered an order for emergency custody on August 30, 2010, and found that probable cause to support removal existed in its probable-cause order entered on September 2, 2010. The court adjudicated the children dependent-neglected on September 30, 2010, and or-

1. In an earlier order, the court terminated the parental rights of the children's mother, Christien Huddleston–Clifton. In the order appealed here, the court also terminated the parental rights of the fathers of two of Ms. Huddleston–Clifton's other children. Mr. Fenstermacher is the only party who has appealed from the order.

dered that custody should be continued with DHS, stating the goal of reunification. In a review order entered on May 26, 2011, the court ordered appellant to

Attend and complete parenting classes;

Submit to a drug and alcohol assessment and follow all recommendations;

Submit to random drug screens;

Obtain and maintain stable and gainful employment;

Participate in individual counseling as recommended by counselor or therapist;

Participate in family counseling as recommended by counselor or therapist; and Comply with the case plan.

The court also found that DHS had made reasonable efforts to provide family services to achieve the goal of reunification. In a permanency-planning order entered on August 4, 2011, the court changed the goal to termination/adoption with respect to the children's mother but stated that "the motion to change the goal to adoption as to the fathers shall be taken under advisement at this time." The court terminated Ms. Huddleston–Clifton's parental rights in January 2012.

On March 5, 2012, DHS filed a petition to terminate appellant's parental rights, alleging two statutory grounds: (1) the children had been adjudicated dependent-neglected and had continued to be out of the parent's custody for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied; and (2) other factors arose subsequent to the filing of the original petition that demonstrate that return of the children to the parent's custody is contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent factors or rehabilitate the circumstances that prevent re-turn of the children to his custody. See Ark.Code Ann. § 9–27–341(b)(3)(B)(i), (vii) (Supp.2011).

## II. Termination Hearing

At the termination hearing, Debbie Williams, the DHS family-service worker on this case, testified that the three girls had been in therapeutic care and were doing well. She said that H.F. had a diagnosis of "post-traumatic-stress syndrome, ADHD, neglect of a child, parent/child relationships"; N.F. had "anxiety disorder, attention deficit, parent/child relationships and neglect of a child"; and S.F. had "adjustment disorder with mixed disturbance of emotions and conduct, neglect of a child, sexual abuse, alleged sexual abuse of a child victim and ADHD." She opined that it was in the children's best interest for appellant's parental rights to be terminated.

Ms. Williams testified that, although appellant completed parenting classes and attended visitation with the children that was offered before he left Arkansas, it would be detrimental to the children to be placed in his custody. She said that he did not submit to a drug and alcohol assessment and that the one time he was drug tested, which occurred after he claimed that he had attended drug and alcohol treatment, he tested positive for marijuana. She testified that she attempted to get records from Ozark Guidance and Counseling, where appellant claimed to have been treated, but was unable to obtain any records. She also testified that appellant had continually moved around. Testimony at the hearing indicated that, since the case began, appellant had lived in Springdale, Arkansas; Battiest, Oklahoma; Van Buren, Arkansas; and four places in North Carolina. At the time of the termination hearing, he and his wife were living with his wife's two teenage children in a

three-bedroom, one-bath trailer in North Carolina. According to Ms. Williams, she had initiated an ICPC home study and had been told by the worker from North Carolina that it had been denied, although she had not received the report at the time of the termination hearing. Ms. Williams also testified that appellant's wife had a "true finding in the State of Arkansas for allowing a child to have marijuana." Finally, she testified that the children were adoptable.

Appellant testified that he had attended counseling at Ozark Guidance and Counseling when he lived in Springdale, Arkansas, including counseling for drug and alcohol abuse. He testified that he had a diagnosis of paranoid schizophrenia, which was diagnosed when he was a child, and that some of the counseling was also for this condition. He said that his paranoid schizophrenia was under control with medication at the time of the hearing. He testified that he did recall someone doing a home study, but he did not know why it would have been denied. He also said that he was not sure what were the medical diagnoses of H.F., S.F., and N.F.

Finally, appellant's wife, Janet, testified that she had been married to appellant for four years. She testified that she was under a doctor's care for degenerative disc disorder and had applied for social-security disability. With regard to appellant's drug use, she testified that "her understanding" was that Ozark Guidance and Counseling had addressed drug and alcohol issues in his counseling for schizophrenia when they lived in Springdale. She said that, although appellant had used marijuana once a day until the last two months, he no longer needed it because his medication for schizophrenia had been changed. Finally, she said that she did not know the medical diagnoses of the girls, but she did know that they needed some counseling and medical treatment. And she testified that she would be able to transport the girls to appointments and other places because she had a driver's license and she could get them wherever they needed to go.

### III. Court's Order

At the conclusion of the hearing, the court found by clear and convincing evidence that the children had been adjudicated dependent-neglected and had been out of the parents' custody for twelve months despite a meaningful effort by DHS to rehabilitate the parents and correct the conditions that caused removal. The court specifically found that appellant had failed to provide adequate and stable housing, did not have a driver's license, had failed to complete drug and alcohol screening and treatment as ordered, and was unable to care for and provide for the special needs of his minor children. The court also found that it was in the best interest of the children to terminate parental rights and stated that it had specifically considered the likelihood that the children would be adopted and the potential harm to the children's health and safety that would be caused by returning them to their parents' custody. The court found that the parents had not complied with the case plan and had not remedied their conditions to allow the children to safely be placed in their custody.

### IV. Standard of Review /Relevant Law

■■■ Termination-of-parental-rights cases are reviewed de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543, at 2, 2010 WL 2612681. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be estab-

lished. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, at 2, 2010 WL 2522197. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 248, 947 S.W.2d 761, 763 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 352, 201 S.W.3d 391, 399 (2005). Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 331, 255 S.W.3d 505, 507 (2007).

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark.Code Ann. § 9–27–341(b)(3)(A)(i), (ii) (Supp.2011). Additionally, the trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(B). However, proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, at 7, 374 S.W.3d 205, 209.

## V. Discussion

■ Appellant does not contest the trial court's finding that termination was in the children's best interest, but argues that there was insufficient evidence to support the statutory ground that the trial court relied upon to terminate his parental rights—that is, that the children had been adjudicated dependent-neglected and had continued to be out of the parent's custody for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied. He contends that this ground does not pertain to him because the children were in their mother's custody when they were removed and thus he was not responsible for the conditions that caused their removal; accordingly, he could not have remedied those conditions. *See, e.g., Lewis v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 154, at 4, 391 S.W.3d 695, 698; *K.C. v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 353, at 12, 374 S.W.3d 884, 891.

■ Although appellant is correct that one of the statutory grounds alleged in the petition and relied upon by the trial court does not apply to him, DHS alleged two statutory grounds in its petition for termination: Arkansas Code Annotated sections 9–27–341(b)(3)(B)(i) and (vii). We hold that the second ground alleged by DHS—often referred to as the subsequent-factors ground—was proved. In our de novo review, we may affirm the trial court's termination if other grounds that were alleged in the petition for termination were proved even when the trial court found a statutory ground that was not. *Bradbury v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 680, at 5–6, 424 S.W.3d 896, 899–900, 2012 WL 5954169; *Allen v. Ark. Dep't of Hu-*

*man Servs.*, 2011 Ark. App. 288, at 9, 384 S.W.3d 7, 12.

In this case, the termination petition alleged that other factors arose subsequent to the filing of the original petition demonstrating that return of the children to the parent's custody is contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent factors or rehabilitate his circumstances that prevent return of the children to his custody. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(vii). The court specifically found in its order that appellant had failed to provide adequate and stable housing, did not have a driver's license, had failed to complete drug and alcohol screening and treatment as ordered, and was unable to care for and provide for the special needs of his minor children. Further, Ms. Williams testified that the only time appellant submitted to a drug screen, he tested positive for marijuana, and appellant's wife testified that appellant had used marijuana once a day until two months before the termination hearing. Finally, appellant had lived in four cities and at least seven homes from the time the children were taken into DHS custody, and Ms. Williams testified that the home study on appellant's home in North Carolina had been denied. Our de novo review convinces us that, under Ark.Code Ann. § 9–27–341(b)(3)(B)(vii), the trial court's decision to terminate appellant's parental rights was not clearly erroneous.

Affirmed.

HARRISON and WYNNE, JJ., agree.