

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV–13–580

| | |
|---|---|
| BRITANY MCELROY and BRANDON FRITTER | **Opinion Delivered** February 12, 2014 |
| APPELLANTS | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. JV-12-84] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Britany McElroy and Brandon Fritter appeal from the circuit court's termination of their parental rights to H.F., born December 21, 2011, and Z.F., born November 23, 2010. Britany McElroy's sole point on appeal is that the trial court committed reversible error when it abused its discretion in terminating her parental rights despite her efforts to comply with the court's orders.[1] Brandon Fritter's sole point on appeal is that the circuit court abused its discretion in denying his motion for continuance. We affirm.

---

[1]We note that in addition to abstracting the termination of parental rights (TPR) hearing, McElroy also included abstracts of the entire proceedings of the March 14, 2012 adjudication hearing, August 8, 2012 review hearing, October 16, 2010 FTA warning hearing, January 10, 2012 permanency planning hearing, March 6, 2013 show cause hearing, and March 15, 2013 dependency neglect and review hearing. These additionally abstracted hearings contributed an additional 116 pages to the abstract. This was excessive abstracting beyond what was necessary to determine the sole issue on appeal. We also note the inclusion of numerous pages of unnecessary documents in the addendum, some in duplicate. Under Supreme Court Rule 4–2(a)(8), the contents of the addendum are to be limited to only those items necessary to an understanding of the issues on appeal or our jurisdiction. We have pointed out that an abstract and addendum can be deficient for

On January 20, 2012, a report was accepted from a hospital where H.F. had been admitted and diagnosed as failure to thrive with significant malnutrition.[2] A home visit from Appellee Arkansas Department of Human Services (DHS) revealed that despite there being little to no preparation for H.F. to come home, there were no immediate health or safety hazards noted. However, appellants were living with Jeffrey Reddick, who is listed on the central maltreatment registry for true findings of substance misuse, environmental neglect, and sexual contact.[3] An emergency hold was taken on H.F. on January 24, 2012. An emergency hold was taken on Z.F., who had been out of state, when she returned to the state on January 26, 2012. An ex parte order for emergency custody was entered on January 26, 2012. The court found probable cause in an order to that effect entered February 6, 2012.[4]

---

containing too much material, as well as too little. *West Memphis Adolescent Residential, LLC v. Compton*, 2010 Ark. App. 450, at 12, 374 S.W.3d 922, 928 (citing *American Transp. Corp. v. Exchange Capital Corp.*, 84 Ark. App. 28, 129 S.W.3d 312 (2003); *Miller v. Hometown Propane Gas, Inc.*, 82 Ark. App. 82, 110 S.W.3d 304 (2003)). Although we decline to order rebriefing, we caution counsel against such practices in the future.

[2]The report was also accepted for inadequate supervision due to the appellants' actions with H.F. in the hospital which included, among other things, McElroy's sleeping more than H.F. and constantly leaving him to smoke cigarettes, at least once in the middle of a feeding, and Fritter's leaving H.F. alone in her room despite being told not to.

[3]McElroy was the victim in the true findings involving Reddick, who was her mother's boyfriend up until her mother's death in December 2011.

[4]Included in the court's findings supporting probable cause was McElroy's true finding of inadequate supervision in 2011, which had only been closed in January 2012, McElroy's inappropriate care of H.F. while he was hospitalized, and the fact that the parties were living with Reddick.



On March 15, 2012, the court entered an adjudication and disposition order finding the children dependent-neglected and at risk as a result of neglect and parental unfitness. The goal of the case was reunification with a concurrent goal of adoption. The children were to remain in DHS's custody.

Following the March 14, 2012 adjudication hearing, the appellants were allowed supervised visitation for one hour twice per week. Beginning April 15, 2012, the appellants were allowed four hours of unsupervised visitation twice per week. Beginning May 15, 2012, a trial home placement began. The court's August 9, 2012 review order revealed that during the trial placement, appellants had been smoking methamphetamines with the children present in the home. This led to the children being removed on May 29, 2012.

In the August 9, 2012 review order, the court further noted McElroy's failure to test negative on drug tests, which prevented her from having visitation with the children; lack of employment; failure to attend Narcotics Anonymous; failure to attend counseling; failure to obtain a drug/alcohol assessment; failure to come in for weekly drug screens when requested; and admitted use of other people's prescription Xanax. The goal of the case remained reunification with a concurrent goal of adoption. The permanency planning hearing scheduled therein was also scheduled to be a show cause hearing for both parties regarding their use of methamphetamines during the trial placement.

A permanency planning hearing order was entered on January 11, 2013. Therein the court stated that appellants had continued illegal drug use and had not: (1) maintained stable housing or employment; (2) submitted to weekly drug screens; (3) completed

SLIP OPINION

counseling; (4) cooperated with DHS; or (5) demonstrated an ability to parent or protect the children. It noted that neither party was present at the hearing and that neither party had made progress toward alleviating or mitigating the causes of the juveniles' removal from the home.[5] The goal of the case was changed to adoption.

A petition for termination of parental rights was filed by DHS on January 22, 2013. DHS asserted that termination of appellants' parental rights was in the best interests of the children considering their likelihood of being adopted and the potential harm if the children were returned to the parties.[6] Grounds given in support of the petition were that (1) the children had been adjudicated dependent-neglected on March 14, 2012, would have been out of the home for one year as of January 24, 2013, and the parties still had not remedied the conditions that necessitated removal, despite DHS's meaningful efforts;[7] and (2) other factors arose subsequent to the original filing of the petition for dependency-neglect that made returning the children to the parties contrary to the children's welfare, and the parties had manifested incapacity or indifference to remedy the subsequent issues or factors which prevented the children's return to their custody.[8]

---

[5]On January 11, 2013, bench warrants were entered for both parties, by separate orders, for failure to appear and contempt of court for the parties' failures as cited in the January 11, 2013 permanency-planning order.

[6]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) and (ii) (Repl. 2009).

[7]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*).

[8]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

A hearing on the petition to terminate parental rights was initially set for March 15, 2013; however, it was reset after the court appointed counsel for Fritter.[9] Instead, the court proceeded with the March 15, 2013 hearing as a review and show-cause hearing. In an order filed March 18, 2013, the court found both parties in contempt of court for noncompliance "by not passes [sic] weekly drug screens." Both parties were sentenced to twenty days in the Washington County jail.

An order terminating the appellants' parental rights was entered on April 5, 2013. The court found that the same was in the best interests of the children considering their likelihood of being adopted and the potential harm if the children were returned to the parties.[10] As grounds supporting termination, the court cited the two grounds alleged by DHS in its petition, namely that (1) the children had been adjudicated by the court to be dependent-neglected and had continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent;[11] and (2) other factors arose subsequent to the original filing of the petition for dependency-neglect which make returning the children to the parties contrary to the

---

[9]Counsel was appointed orally from the bench at the March 15, 2013 hearing. A separate order appointing counsel was entered March 28, 2013.

[10]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) and (ii).

[11]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*).

SLIP OPINION

children's welfare, and the parties have manifested incapacity or indifference to remedy the subsequent issues or factors that prevent the children's return to their custody.[12]

This timely appeal followed.

In cases involving the termination of parental rights, there is a heavy burden placed on the party seeking to terminate the relationship.[13] This is because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents.[14] Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[15] Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children.[16]

## I. *McElroy—Sufficiency*

McElroy makes the argument that the trial court committed reversible error when it abused its discretion in terminating her parental rights despite her efforts to comply with the court's orders. While she essentially argues sufficiency, we note that the standard of review is not abuse of discretion. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be

---

[12]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a).

[13]*Morrison v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 479, ___ S.W.3d ___ (citing *Blackerby v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 858, at 4, 373 S.W.3d 375, 378).

[14]*Id.*

[15]*Id.*

[16]*Id.*

proved by clear and convincing evidence.[17] Clear and convincing evidence is that degree

of proof that will produce in the fact-finder a firm conviction as to the allegation sought to

be established.[18] The appellate inquiry is whether the trial court's finding that the disputed

fact was proved by clear and convincing evidence is clearly erroneous.[19] A finding is

clearly erroneous when, although there is evidence to support it, the reviewing court on

the entire evidence is left with a definite and firm conviction that a mistake has been

made.[20] In resolving the clearly erroneous question, we give due regard to the opportunity

of the trial court to judge the credibility of witnesses.[21] We have noted that in matters

involving the welfare of young children, we will give great weight to the trial judge's

---

[17]*Arnold v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 260, at 2, ___ S.W.3d___ (citing Ark. Code Ann. § 9-27-341 (Supp. 2011); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997)).

[18]*Id.* (citing *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992)).

[19]*Id.* (citing *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997)).

[20]*Fenstermacher v. Ark. Dep't. of Human Servs.*, 2013 Ark. App. 88, at 6–7, ___ S.W.3d___ (citing *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997)).

[21]*Id.* at 7, ___ S.W.3d at ___ (citing *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 352, 201 S.W.3d 391, 399 (2005)).

SLIP OPINION

personal observations.[22] Proof of only one statutory ground is sufficient to terminate parental rights.[23] We review termination of parental rights cases de novo.[24]

Regarding the court's first ground, though she does not dispute that the children were out of the home for more than twelve months, McElroy argues that termination of her parental rights was not proper because she made progress toward complying with the court's orders. In support of her argument, McElroy cites her completion of psychological counseling, enrollment in college, move to a three-bedroom trailer, and being drug free. Progress toward or even completion of the case plan is no bar to termination of parental rights.[25] It is well settled that evidence that a parent begins to make improvement as termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and remedy the situation that caused the children to be removed in the first place.[26] Despite her children having been in DHS's care since January 2012, excepting the 14-day failed home placement, McElroy (1) did not begin counseling until August 9,

---

[22]*Gutierrez v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 575, at 9, ___ S.W.3d ___ (citing *Cobbs v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004)).

[23]*Fenstermacher*, 2013 Ark. App. 88, at 6-7, ___ S.W.3d at ___ (citing *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, at 7, 374 S.W.3d 205, 209).

[24]*Arnold, supra.* (citing *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)).

[25]*Burnett v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 596, at 14, 385 S.W.3d 866, 874 (citing *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005)).

[26]*Id.*

SLIP OPINION

2012, completing it on October 18, 2012; (2) had enrolled in college only recently;[27] (3) had been in the three-bedroom trailer approximately three months at most as their caseworker testified that McElroy had no stable home as recently as January 2013; and (4) had tested positive for THC as recently as February 2013.[28]

Additionally, a review of the record shows that though McElroy was making some progress initially—so much so that she was on track to have the children returned to her on July 15, 2012—her cooperation became limited beginning with the May 2012 trial placement. In addition to the above-noted issues, the trial placement ended because McElroy was smoking methamphetamines in the children's presence. She then went on to test positive for THC in July 2012, December 2012, and February 2013, with the latter test being eleven days before the February 20, 2013 birth of a third child between her and Fritter.[29] She tested positive for amphetamines and methamphetamines in October 2012. All of these tests occurred after she had already lost her children for the second time. Because she had not passed three consecutive weekly drug tests, McElroy had not visited with her children since December 2012. Regarding whether McElroy was currently using drugs, the court pointed out that she had not been submitting to drug screens as ordered,

---

[27]McElroy did not give a date of enrollment, but cited December 20, 2012, as her last day attending before going on maternity leave.

[28]Despite the test results, McElroy denied using drugs.

[29]A separate case plan involved the parties' child, L.F., born February 20, 2013. An emergency hold was taken on L.F. at the initial termination hearing in the case involving H.F. and Z.F. The case involving L.F. is not now before us, despite being addressed by the court below in this case.



so there is no evidence to support her assertion that she was currently drug free. The evidence supports the court's finding that McElroy continued using illegal drugs.

McElroy was unemployed throughout the majority of the case; having been employed only twice, for short periods of time.[30] Because of her lack of income, McElroy and the children had lived in several different places throughout the case, including with Reddick, who was on the central maltreatment registry for abusing her when she was a minor. Though she asserted that she had a stable home, it was not clear how long she would have it because her rent was being paid two months at a time by Arkansas Rehabilitation Services.[31] Furthermore, she received food stamps and was dependent on Fritter to pay for all other necessities because of her lack of employment. The evidence supports the court's finding that she had not maintained stable employment or housing.

As this is only a sampling of actions taken by McElroy which were against court orders, there was more than enough evidence to show that in the more than twelve months since the children went into care, McElroy had failed to remedy the neglect and parental unfitness that caused the children's removal. Therefore, we find that the court's ruling terminating McElroy's rights was not clearly erroneous. Because we find that this

---

[30]McElroy had worked at a Dollar Tree and an Applebee's restaurant. McElroy acknowledged the court's order that she obtain a job, but stated that she did not have a job "because I'm trying to prove that I am disabled." She went on to state "I don't know why I didn't get a job when the Court ordered it. I was just focused on trying to get my disability. And when you're trying to get your disability, if you've been working they will not give it to you."

[31]McElroy was required to reapply for assistance every two months. She advised that she was able to receive assistance from Arkansas Rehabilitation Services, despite not receiving disability benefits, because she had paperwork documenting her disability.



ground was sufficient to support the termination of McElroy's rights, and only one ground is required, we do not address the court's second ground regarding issues that arose subsequent to the children's removal from McElroy's custody.

## II.  *Fritter—Continuance*

Fritter's sole argument on appeal is that the court abused its discretion in denying his motion for continuance of the termination of parental rights hearing. He argues that his court-appointed attorney did not have sufficient time to prepare because he was appointed just two weeks prior to trial and that the trial court made it difficult for counsel to access Fritter at the time of his counsel's appointment by incarcerating Fritter for failing to comply with the case plan.

The granting or denial of a motion for continuance is within the sound discretion of the trial court, and that court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice.[32] Additionally, the appellant must show prejudice from the denial of a motion for continuance.[33]

In support of his argument, Fritter cites Arkansas Code Annotated section 9-27-316(h)(4), which states:

> If at the permanency planning hearing the court establishes the goal of adoption, the court shall determine if the putative parent has established significant contacts with the juvenile in order for the putative parent's rights to attach and shall appoint counsel if eligible as provided in subdivision (h)(3) of this section.

---

[32]*Ashcroft v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 244, at 10, 374 S.W.3d 743, 748 (citing *Jones-Lee v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 160, 316 S.W.3d 261).

[33]*Id.* (citing *Smith v. Ark. Dep't of Human Servs.*, 93 Ark. App. 395, 219 S.W.3d 705 (2005)).



The entirety of appellant's motion to continue was as follows:

Well, Your Honor, in this case, I'm gonna [sic] ask for a continuance on this – this one because, for one, I just got appointed. I found out about my appointment March 18th. My client's been incarcerated the whole time since then. As I understand there's – well, there may be a difference of a view on this, but my client was apparently doing pretty well on some accounts before they [sic] were [he] incarcerated for contempt, and so I'd like more time to work with my client, get ready, make the best possible showing at the Termination as we can.

In response to counsel's motion, the court specifically stated:

I'm going to deny your motion for a continuance in light of the fact […] that we were set for a Termination Hearing on March the 15th and I continued that and appointed you to represent Mr. Fritter, who's been in the jail, Washington County Jail, since March the 15th, so obviously, you could've visited with him at the county jail.

Fritter was readily available from March 15 through the morning of the termination hearing on April 3, 2012. We find no abuse of discretion. Even if we were to find that the court abused its discretion, and we do not, appellant's only argument regarding prejudice was that his incarceration "prejudiced Appellant in his abilities to work the case plan and utilized [sic] the reunification services DHS was ordered to provide him" and led to "the ultimate prejudice of all"—his rights being terminated. This argument was not made below. Furthermore, Fritter made no arguments below regarding alleged difficulties for his counsel to access him nor did he make any arguments for a determination from the court that he, as putative father, had established significant contacts with the children. A party cannot change his argument on appeal and is bound by the scope of his arguments

made to the circuit court.[34] Even in termination cases, we will not address arguments raised for the first time on appeal.[35]

Affirmed.

GLADWIN, C.J., and WOOD, J., agree.

*Huffman Butler, PLLC*, by: *Brian A. Butler*; and *Leah Lanford*, Arkansas Public Defender Commission, for appellants.

*Tabitha B. McNulty*, County Legal Operations; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.

---

[34]*Andrews v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 22, at 9, 388 S.W.3d 63, 68 (citing *Holiday Inn Franchising, Inc. v. Hospitality Assocs., Inc.*, 2011 Ark. App. 147, 382 S.W.3d 6).

[35]*Id.* (citing *Lyons v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 271).