

# ARKANSAS COURT OF APPEALS

### DIVISION IV
**No.** CV-15-750

| | |
|---|---|
| WILLIAM NORTON<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** January 27, 2016<br><br>APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. JV-13-155]<br><br>HONORABLE BARBARA HALSEY, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

The Greene County Circuit Court terminated appellant William Norton's parental rights to his daughter S.N. (DOB: 6/7/2011).[1] On appeal, Norton challenges the sufficiency of the evidence supporting the grounds for termination. We affirm.

### I. *Procedural History*

On August 15, 2013, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect. In an affidavit attached to the petition, Kandi Tarpley, a DHS family-service worker, indicated that a report had been made to the child-abuse hotline on August 12, 2013, regarding the death of S.N.'s three-week-old sibling the previous day. Tarpley was asked to conduct a safety assessment of then two-year-

---

[1]S.N.'s mother, Erica Norton, consented to the termination of her parental rights. Despite her consent, the trial court involuntarily terminated her rights at DHS's request. She is not a party to this appeal.

old S.N. who lived in the home. Tarpley learned from a probation officer that Norton had earlier that day tested positive for barbiturates, benzodiazepines, and opiates. The probation officer informed Tarpley that Norton had a prescription for hydrocodone filled on July 31, 2013, and that 100 pills were missing. She also said that Norton had taken thirty-nine Xanax pills over the course of twelve days. Tarpley further testified that she had contacted S.N.'s mother, who was staying at Mission Outreach because of a no–contact order in place between her and Norton.

The trial court entered an ex parte order for emergency custody and subsequently found probable cause to remove S.N. from the home given the emergency situation. On October 24, 2013, the trial court adjudicated S.N. dependent-neglected, to which the parties stipulated. In an agreed review order entered February 10, 2014, the trial court found that Norton had partially complied with the case plan but had failed to resolve all of his criminal issues and had failed to obtain and maintain stable housing. Following a July 31, 2014 hearing, the trial court entered an agreed permanency-planning order indicating that, based on Norton's immediate attempt to receive services upon his release from incarceration, he would receive three additional months of services.

After a hearing held on December 16, 2014, the trial court entered a fifteen-months' review order finding that the parents had not complied with the case plan and court orders in that they had refused to submit to drug testing and had no home for more than one year to which S.N. could be returned. The trial court changed the goal of the case from reunification to termination. On February 27, 2015, DHS filed a petition to terminate



parental rights with respect to both parents. A termination hearing was held on June 25, 2015.

## II.   *Termination Hearing*

Holly Johnson, DHS family-service worker, testified that S.N. had been out of the parents' custody for almost two years. She stated that Norton had not complied with the case plan in that his stable housing was in the Greene County jail; he was unemployed; and he remained in contact with DHS only due to his incarceration. Johnson stated that, when Norton was not incarcerated, he had visited with S.N. on a regular basis. She also testified that from October 2013 through April 2014, Norton had tested positive for drugs; from June 2014 through August 2014, he had tested negative for drugs; and from October 2014 through December 2014, he had refused to submit to drug testing. Johnson conceded that Norton had not been asked to submit to a drug test since December 2014 but noted that Norton had remained incarcerated since December 22, 2014. Johnson further testified that Norton had a history of public intoxication, DWI, careless driving, criminal mischief, disorderly conduct, domestic battery, resisting arrest, and probation revocation.

Norton testified that he had received an eight-year sentence for second-degree domestic battery of his wife. Norton stated that, before he was incarcerated, he had been taking Xanax and Tylenol 3, but he claimed that he did not know why. He said that he had "been to two rehabs and they were short" but that he had not been offered drug treatment while in jail. Norton admitted that he was unable to provide S.N. with a stable home life.

Following the hearing, the trial court found that termination of parental rights was in

S.N.'s best interest and found two grounds on which to terminate Norton's rights. The two grounds applicable to Norton are listed in Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2013):

> (i)(*a*) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.
> . . . .
>
> (vii)(*a*) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(i) & (vii).

Specifically, as to the first ground, the trial court found that Norton had been abusing controlled substances at the time S.N. was removed from his custody, that since August 2014 Norton had refused to submit to drug testing, that he had not obtained a residence, and that he currently had unresolved criminal issues. Regarding subsequent issues, the trial court noted that Norton had been arrested for DWI on April 18, 2014, and convicted; that he had failed to complete an outpatient, substance-abuse treatment plan "and terminated his mental health therapy without completion"; that he had refused random drug screens since August 2014 in violation of the case plan and the court's orders; and that he was currently incarcerated.

### III. *Standard of Review*

In order to terminate parental rights, a trial court must find by clear and convincing

evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted, and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Additionally, the trial court must find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B). However, proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205.

Termination–of–parental–rights cases are reviewed de novo. *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id*. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id*. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id*.



IV. *Discussion*

A. Failure to Remedy

Norton asserts that his use of controlled substances had been remedied. He contends that the fact that he had refused drug tests over a forty-eight-day period in 2014 is not clear and convincing proof that he was misusing drugs at the time of the termination hearing in June 2015. Next, Norton points out that there was no evidence that the no-contact order had been violated after the case was opened and, because there was no evidence that his wife had been battered again, he asserts that the behavior that resulted in the no-contact order had been remedied.

The trial court could have reasonably concluded that, given Norton's repeated refusals to take a drug test, his drug abuse had not been remedied. Although Norton asserts that his drug abuse and violent behavior had been remedied, we note that Norton was incarcerated for extended periods, which is not the remedy contemplated by our termination statute. We hold that the trial court did not clearly err in determining that the causes for S.N.'s removal from the home had not been remedied.

Moreover, Norton makes no argument about his failure to remedy his lack of stable housing. He admitted that he could not provide a home for S.N. The intent of our termination statute is to provide permanency in a juvenile's life in all circumstances where return to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3).



At the time of the termination hearing, Norton was still incarcerated and had no home. His lack of stable housing for S.N. is reason enough to affirm on the failure-to-remedy ground.

### B. Subsequent Factors

We will briefly address Norton's argument on the second ground for termination, although only one ground is necessary. *Gossett, supra.* Norton contends that the four subsequent issues listed by the trial court had been remedied. First, he contends that there was no document and no testimony proving that he had been arrested for or convicted of DWI. We agree; however, Norton did not object to the case worker's testimony as to his criminal history. To preserve an objection for appeal, a timely and appropriate objection must be made. *Rodriguez v. Ark. Dep't of Human Servs.*, 360 Ark. 180, 200 S.W.3d 431 (2004). Second, Norton argues that there was no evidence that he was ordered to attend therapy. Norton is correct; however, other unremedied subsequent factors were present. Third, he argues that not taking drug tests for "a mere 7% of the entire case—sandwiched between extremely long periods of no drugs isn't clear and convincing evidence that the issue wasn't remedied." In refusing even one test, Norton disobeyed a court order despite knowing that his submission to the tests was a condition of getting his child back. Fourth, Norton contends that his incarceration was not a *subsequent* factor because he had battered his wife before the case had been opened; however, Norton's punishment for battery—his incarceration—covered a period of time that was subsequent to the case's having been opened.

Also, Norton complains that the trial court did not find that DHS had offered



appropriate family services to remedy his incarceration. Assuming such services even exist, the trial court made numerous findings that DHS had made reasonable efforts to provide services to Norton. A failure to challenge the court's prior "meaningful–efforts" findings precludes this court from now reviewing any adverse rulings resulting from those orders not appealed from. *Jones-Lee v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 160, 316 S.W.3d 261.

Affirmed.

KINARD and GLOVER, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.