
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–16–424

| | |
|---|---|
| MARCUS JOHNSON, SR.<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and M.J., MINOR CHILD<br>APPELLEES | **Opinion Delivered** September 21, 2016<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. JV-2013-71]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

The Mississippi County Circuit Court terminated appellant Marcus Johnson, Sr.'s, parental rights to M.J., born June 29, 2013. Johnson argues on appeal that the trial court erred because it relied on a ground not pled and the alternative ground pled was not proved because there was no evidence of compliance with the Americans with Disabilities Act (ADA). We affirm.

### I. *Procedural History*

Appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect on November 26, 2013, alleging that Gloria Chambers, mother of M.J., had violated a no-contact order and had been arrested, resulting

in a seventy-two-hour hold being placed on M.J.[1]  An ex parte order was signed, and M.J. was placed in DHS custody.  On December 2, 2013, a probable-cause order was filed, which found it to be in M.J.'s best interest to remain in DHS custody and for DHS to develop a case plan and provide appropriate services. [2]

M.J. was adjudicated dependent-neglected on February 13, 2014. The order reflects that M.J. was dependent-neglected because there was no legal caregiver for him when Chambers was incarcerated.  The goal of the case was to return M.J. to Chambers's custody, and the adjudication order also reflects that DHS should comply with the ADA because both parents were receiving Social Security Disability benefits (SSD).

In the May 19, 2014 review order, the trial court ordered that "Mr. Johnson's houseguest shall complete her portion of the home study," and the goal of the case continued to be the return of M.J. to his mother.  The trial court found that DHS had made reasonable efforts to provide services to achieve the goal of the case.  The case was reviewed again on August 13, 2014, and the resulting order reflects that the goal of the case remained the same, both parents had completed parenting classes and had watched the video "The Clock is Ticking"; however, but Johnson had tested positive for THC on August 1, 2014. The parents were ordered to submit to random drug screening, and DHS was found to have made reasonable efforts to provide family services to achieve the goal of the case by

---

[1] Chambers executed a consent to termination of her parental rights on October 22, 2015, and she is not the subject of this appeal.

[2] Even though Calvin Taylor was originally listed as M.J.'s legal father in the emergency petition and ex parte order, a paternity test determined that Johnson was M.J.'s father, and the probable-cause order lists Johnson as such.



providing transportation and visitations. Thereafter, the case was continued on October 9, 2014, and again on April 13, 2015, and set for review on June 17, 2015.

II. *Petition for Termination of Parental Rights*

On July 8, 2015, DHS filed a petition for termination of parental rights alleging that M.J. had been out of the custody of his parent for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied, citing Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(*a*) (Repl. 2015). To support this ground for termination, DHS alleged that the results of Johnson's random drug screens were as follows: August 1, 2014, positive for THC; August 19, 2014, positive for THC; October 6, 2014, negative; October 23, 2014, positive for THC, methadone, amphetamine, opiates and PCP; November 7, 2014, positive for THC; January 14, 2015, positive for opiates; March 13, 2015, positive for opiates; April 10, 2015, negative; May 4, 2015, abnormal test; June 10, 2015, positive for THC and cocaine. DHS also alleged that Johnson had two invalid tests—he tried to put soap in a specimen cup and another urine sample was cold—and had been incarcerated multiple times throughout the case. DHS alleged that a home study could not be completed because Johnson and his roommate would not submit to the required background checks as ordered by the circuit court.

DHS further alleged that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of M.J. in the custody of the parent was contrary to his health, safety, or welfare and that, despite the offer of appropriate family services, the parent had manifested the incapacity or indifference to

remedy the subsequent issues or factors or rehabilitate their circumstances that prevented the placement of the juvenile in the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii). To support this ground, DHS alleged that Johnson had tested positive for illegal substances on numerous occasions as cited above and had been incarcerated several times during the pendency of the case. Also, DHS alleged that Johnson and his roommate had not cooperated in completing a home study. DHS claimed that the potential harm of placing the child with Johnson was that he continued to test positive for illegal substances, and he had "legal issues."

At the termination hearing on December 14, 2015, Sylvia Ware, a supervisor for DHS, testified that M.J. was taken into custody on November 22, 2013, because his mother had been arrested for violating a no-contact order, and he had been in DHS custody since then. Ware stated that Johnson completed parenting classes, watched "The Clock is Ticking" video, and maintained visitation with M.J. She stated that there were complaints of Johnson being too loud during visitation and that he took his shirt off in the park and allegedly exposed his genital area. Johnson denied this allegation. Ware testified that Johnson had stable income but not stable housing, because he had moved several times during the case. She thought that he was living with his girlfriend at the time of the termination hearing, but neither a background check nor a central-registry check had been performed on the girlfriend. She said that Johnson received $733 per month SSD based on a speech impediment. She testified about the drug screens that Johnson had taken during the pendency of the case and added eight positive results to those listed in the termination petition. She also stated that Johnson had tested positive for cocaine and THC on the date

4

of the hearing. She said that he had completed only one of the twelve outpatient classes recommended based on a drug-and-alcohol assessment. She claimed that she was not aware of a specific offer of transportation to the classes. She said that he claimed that someone had laced his cigarette with cocaine and THC. She also testified that M.J. was adoptable and was already in a preadoptive home, placed together with his sister.[3]

Gregory Watson, a DHS caseworker assigned to Johnson's case, testified that Johnson was living in a one-bedroom apartment with his girlfriend but intended to move to a bigger place after he was married. Watson said that he had witnessed visitations with Johnson and M.J., and that Johnson loved and cared about M.J. Watson also stated that he had always asked Johnson if he needed a ride, either to outpatient sessions or to visitation, and had told Johnson to give him a call if he were needed.

Johnson testified that he was M.J.'s father and that he had been living at his current apartment for the last four months. He also testified to two other addresses where he had lived during the pendency of the case. He said that if M.J. went home with him that day, M.J. would get the bed, and he and his girlfriend would sleep on two couches. He stated that he did not have diapers, but he would obtain everything if necessary. He said that he and his girlfriend planned on marrying and getting a larger home. He testified that they did not have a car, and he did not drive; however, he had friends and relatives to call on if he needed transportation for his son. He said that he had a high school diploma but drew SSD for his speech impediment and had never worked in his life. He testified that he had not

_____

[3] D.C., born August 14, 2014, is Chambers's daughter, but is not the daughter of Johnson, and is therefore not discussed in this appeal.

smoked weed "for a minute. About two or three weeks . . . ." He explained that he had tested positive because he was around people who "blew weed" in his face. He then stated that he had never smoked marijuana but had been around people who blew it in his face. He also said that he thought the cocaine in his system was from someone putting it in his cigarettes, and he denied putting soap in his urine specimen when he was drug tested.

Johnson's niece, Sadania Byrd, testified that she was thirty-one years old and saw Johnson once a week. She stated that Johnson was a good father and loved his son. She said that she drove Johnson wherever he needed to go and that she had never witnessed Johnson using drugs of any kind.

### III. *Trial Court's Termination-of-Parental-Rights Order*

The trial court granted DHS's petition for termination and ruled that M.J. would be adopted if the petition were granted, because he was in a preadoptive placement with his sister. The trial court also found potential harm to the health and safety of M.J. if he returned to the custody of his mother, and she had consented to termination of her parental rights. Further, M.J. had been out of the home for over two years and had not been placed with Johnson due to Johnson's housing instability, drug usage, lack of reliable transportation, and failure to follow the recommendation of the drug-and-alcohol assessment. The order terminating parental rights was filed on February 19, 2016, and Johnson filed a timely notice of appeal on March 4, 2016.

### IV. *Applicable Law*

The rights of natural parents are not to be passed over lightly; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of

the child. *Oldham v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 490, at 6–7, 469 S.W.3d 825, 829. A trial court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

 

Johnson does not challenge the trial court's finding that termination was in M.J.'s best interest, including consideration of the likelihood that M.J. will be adopted and of the potential harm that would be caused by returning him to Johnson's custody. He challenges only the trial court's finding of statutory grounds on which to terminate his parental rights.

### V. *Grounds for Termination*

Johnson argues that because the trial court terminated his parental rights on a statutory ground not pled, it cannot be said that DHS proved its petition with clear and convincing evidence. The petition alleged that M.J. had been adjudicated dependent-neglected and had continued

> out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the Department to rehabilitate the parent and correct the conditions that caused the removal, those conditions have not been remedied by the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a).

Johnson claims that, in support of this allegation, DHS stated that M.J. had been adjudicated dependent-neglected "due to no legal caregiver as the mother was incarcerated at the time." He further states that DHS "also asserted factual allegations" against both parents, and concluded that "[d]espite a meaningful effort by the Department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a)." He points out that, in contrast, the trial court found that DHS proved that M.J. had been out of the noncustodial parent's home for twelve months and despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions "that prevented the child from safely being placed in the parent's home, the conditions have not been remedied by the parent."

Johnson claims that DHS failed to plead the ground in the termination petition that was employed by the circuit court at the termination hearing and, thus, that the ground relied on must be excluded. In support, Johnson cites *Dornan v. Arkansas Department of Human Services*, 2014 Ark. App. 355; *Jackson v. Arkansas Department of Human Services*, 2013 Ark. App. 411, 429 S.W.3d 276; and *K.C. v. Arkansas Department of Human Services*, 2010 Ark. App. 353, 374 S.W.3d 884.

In *Dornan*, our court held as follows:

> Due process demands that a parent be notified of the grounds that may constitute a basis for termination; at a minimum, it requires notice reasonably calculated to afford a natural parent the opportunity to be heard prior to termination of his or her parental rights. *Jones v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 632; *see Jackson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 411, 429 S.W.3d 276 (reversing because Jackson was not placed on notice that he must defend on a particular ground on which termination was based: the department never specifically argued that the trial court should rely on the ground, the trial court took the matter under advisement without ruling from the bench, and the first specific mention of this ground was in the trial court's order terminating parental rights) (citing *Kight v. Ark. Dep't of Human Servs.*, 94 Ark. App. 400, 409, 231 S.W.3d 103, 109 (2006)). Here, we agree that the first three statutory grounds found by the circuit court cannot sustain the termination of appellant's parental rights because she was not placed on notice that she must defend against them.

*Id*. at 16–17. However, we also held that the fourth ground pled, aggravated circumstances, was a proper basis for termination because the petition specifically alleged as proof of this ground that appellant had not had regular visits with the children since they had gone into care. *Id*. at 17.

Johnson argues that he had no notice prior to the termination hearing that his parental rights might be terminated on the ground that the child had been out of his custody for twelve months and that he had failed to correct the conditions that prevented the child

from safely being placed in his home. He claims that because the trial court relied on that sole ground in terminating his parental rights, the order must be reversed. DHS and the attorney ad litem assert that the subsequent-factors statutory ground was alleged and proved, and on de novo review, this court can affirm the circuit court's termination decision on any ground that was alleged in the petition and proved. *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483. We agree, relying on the same reasoning as applied in *Dornan*, *supra*, and now consider the other statutory ground pled.

## VI. *Subsequent Factors*

Although the trial court did not terminate Johnson's parental rights on the subsequent-factors ground, it was pled by DHS as a ground supporting termination. But, Johnson argues that it does not offer an alternative basis for this court to affirm. He claims that, under the subsequent-factors ground, DHS must prove that these subsequent factors prevented the return of M.J. to him despite the fact that DHS offered "appropriate family services." Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a). Johnson claims that DHS failed to offer sufficient proof in this regard since, he alleges, it is undisputed that no reasonable accommodations were made for him.

He points to the February 13, 2014 adjudication order that specifically directed DHS to comply with the ADA because both parents received SSD. He contends that, despite this directive, there was no evidence that DHS ever investigated the potential accommodations needed to ensure successful reunification of him with his son. He acknowledges that he did not challenge DHS's failure to comply with the ADA in the trial below, but claims that he is not precluded from raising this issue on appeal, citing *Baker v.*

*Arkansas Department of Human Services*, 2011 Ark App. 69 (where this court ordered rebriefing of a no-merit brief), and *Baker v. Arkansas Department of Human Services*, 2011 Ark. App. 400 (where we held that a nonfrivolous argument could have been made that a *Wicks* exception—no objection required to preserve an issue for appeal where the error is so flagrant and egregious that the trial court should, on its own motion, have taken steps to remedy it—should apply where the indigent parent's mental disability was at issue). *See Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

Johnson contends that the trial court and all parties were aware from the time of the adjudication that he received SSD. He claims that his speech impediment would also have been obvious to all parties, and Sylvia Ware, a caseworker for DHS, testified that she was aware that Johnson received SSD. He claims that, despite DHS's knowledge of his receipt of SSD, no attempt was made by DHS to investigate what accommodations might be needed. Thus, he maintains that the trial court, on its own motion, should have at least inquired into DHS's compliance with the ADA. He contends that there was no evidence that he was given meaningful access to reunification and family-preservation services as required under section 9-27-341(b)(3)(B)(vii)(*a*); thus, he asserts that it cannot serve as an alternative basis for the termination of his parental rights.

We hold that Johnson's failure to follow circuit court orders and his drug use were the subsequent-factors issues, and these failures are sufficient to support a subsequent-factors finding. *Cotton v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 455, 422 S.W.3d 130. Further, Johnson's appropriate-family-service challenge must fail because, at every hearing, the circuit court found that DHS had made reasonable efforts, and Johnson never appealed

those findings.  Prior to his appeal, Johnson never challenged the appropriateness of any DHS-offered reunification service, and he never argued that there were particular reunification services that DHS should provide.  *See Emmons v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 541, at 5 (where appellant argued that, because he was a quadriplegic, he should have been given, under the ADA, transportation to a drug assessment that he failed to attend, and this court held that the previous orders finding that reasonable services had been provided were not appealed and therefore precluded review on that issue).  Finally, Johnson's failure to follow the orders designed to achieve M.J.'s permanent placement demonstrated an incapacity or indifference to remedy the subsequent factors.  *Myers v. Ark. Dep't of Human Servs.*, 2011 Ark. 182, 380 SW.3d 906.  Accordingly, we affirm.

Affirmed.

VIRDEN and GLOVER, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.